IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KYLE MURPHY, | ) | Case No. 5:16-cv-02315 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| JOHN COLEMAN, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.      Introduction

Petitioner Kyle Murphy seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his convictions and sentences in *State v. Murphy*, Case No. 2014 CR 0326 violated his constitutional rights.  ECF Doc. Nos. 1, 1-1.  Warden John Coleman,[1] the respondent, has filed a return of writ.  ECF Doc. 6.  Murphy has filed a traverse.  ECF Doc. 8.

The matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Murphy's petition or other case-dispositive motions.  For the reasons set forth in detail below, I recommend that the Court DENY his petition.

---

[1]  John Coleman is the warden of the Toledo Correctional Institution, where Murphy is incarcerated.  ECF Doc. 1-1 at Page ID# 37.

II.     **Litigation Background**

A.      **Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts "shall be presumed to be correct." 28

U.S.C. § 2254(e)(1); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, at *2 (6th

Cir. Oct. 30, 2017).  The Ohio Court of Appeals summarized the facts underlying Murphy's

conviction as follows:

> {¶2}  On February 11, 2014, Appellant resided with his girlfriend S.L. and her eleven-
> month old daughter[, ("A."),] in a trailer.  At approximately 12:00 A.M., S.L. put the
> child to sleep.  At approximately 1:00 to 2:00 A.M., S.L. went to bed.  S.L. was
> awakened at 6:00 A.M. to the sound of the child crying.  S.L. then entered the bathroom
> of the trailer and found Appellant holding the child upside down in the shower under
> running water.  Appellant held the child with one leg in each hand under the water. He
> told S.L. the child had diarrhea and he was washing her off. The child was changed into
> new pajamas and a new diaper, calmed, and Appellant agreed to put her to bed.  S.L. also
> went back to bed.
>
> {¶3}  S.L. again awoke at 12:00 P.M. to the sound of the child crying.  She then found
> Appellant in the hallway of the trailer with the child in his arms.  S.L. noticed the child
> had different pajamas on, and her face looked as if it had been burned.  Her eyes were
> bloodshot and she had bruises all over her face.  S.L. grabbed the child, and asked
> Appellant what had happened.  Appellant then made statements to the effect he wanted to
> harm himself.  Appellant had a knife, and continued making statements he wanted to kill
> himself.  S.L. texted a friend who was an EMT and worked for the Canton Township Fire
> Department.  S.L. proceeded to remove the child from the premises until the police
> arrived.

*State v. Murphy*, 5th Dist. Stark No. 2105 CA 00024, 2015-Ohio-5108, ¶ 2-3.

B.      **Procedural History**

1.      **State Court Conviction**

On April 15, 2014 a Stark County Grand Jury charged Murphy with the following:

> Counts One and Two: Rape (one fellatio (Count One) and one vaginal/anal (Count Two))
> in violation of Ohio Rev. Code Ann. § 2907.02(A)(1)(b); and
>
> Count Three: Endangering children in violation of Ohio Rev. Code Ann. §
> 2919.22(B)(1)(E)(2)(d).

*See* ECF Doc. 6-1, Exhibit 1.  Because the victim was eleven months old at the time of the charge, the sentencing provisions of Ohio Rev. Code § 2971.03(A)(2) applied, providing a possible penalty of life imprisonment without parole eligibility.

Murphy, with his retained counsel, pleaded not guilty to all charges.  *See* ECF Doc. 6-1, Exhibit 2.  Murphy's jury trial began on January 12, 2015; three days later the jury rendered unanimous verdicts finding Murphy guilty all charges.  *See* ECF Doc. 6-1, Exhibit 3.

After a January 20, 2015 sentencing hearing, *See* ECF Doc. 6-1, Exhibit 4, the trial court sentenced Murphy to life imprisonment without parole eligibility on each rape count and a prison term of eight years for endangering children.  *See* ECF Doc. 6-1, Exhibit 4.  The trial court ordered Murphy to serve the three prison terms consecutively.

### 2.    Direct Appeal

Murphy, through his counsel, pursued a timely direct appeal in the Ohio Court of Appeals.  *See* ECF Doc. 6-1, Exhibit 5.  Murphy's appellate brief raised four assignments of error:

> Assignment of Error Number One – The trial court denied Appellant his constitutional rights to due process and a fair trial, under the Fourteenth Amendment to the constitution of the United States, by denying Appellant's motions for judgment of acquittal when the evidence was insufficient to prove "penetration" an essential element of the offence of rape charged in Count Two of the indictment.

> Assignment of Error Number Two – The trial court denied Appellant his constitutional right to due process and a fair trial under the Fourteenth Amendment to the constitution of the United States by denying Appellant's motions for judgment of acquittal when the evidence was insufficient to prove the fellatio, an essential element of the crime of rape as charged in count one of the indictment.

> Assignment of Error Number Three – The trial court denied Appellant's constitutional right to effective assistance of counsel, due process and a fair trial by limiting counsel's argument to the jury on reasonable doubt.

> Assignment of Error Number Four – The trial court denied appellant's constitutional right to due process and fair trial under the Fourteenth Amendment to the [Constitution] of the United States by deny[ing] appellant's request for a continuance of the trial.

*See* ECF Doc. 6-1, Page ID# 80.  Murphy did not appeal his child endangering conviction.  *Id.*

On December 7, 2015, the Ohio Court of Appeals reversed the trial court judgment on the Count Two charge of vaginal and/or anal rape, based on its conclusion that the evidence was insufficient to prove the essential element of penetration.  *See State v. Murphy*, 5th Dist. Stark No. 2105 CA 00024, 2015-Ohio-5108, ¶ 22-24.  However, the court found the Count Two evidence was sufficient to prove the lesser included offense of attempted vaginal and/or anal rape.  *Id.* at ¶ 24.  The court also affirmed the trial court's judgment on Murphy's Count One conviction for fellatio rape, in violation Ohio Rev. Code § 2907.02(A)(1)(b).  *Id.* at ¶39; ECF Doc. 6-1, Page ID# 168.  The Ohio Court of Appeals modified the Count Two judgment to reflect a verdict of guilty on the lesser included offense of attempted rape and remanded the matter for resentencing.  *Id.* at ¶¶ 25, 39.[2]

On January 19, 2016, Murphy, through counsel, filed a notice of appeal in the Supreme Court of Ohio.  ECF Doc. 6-1, Page ID# 170.  Murphy raised two propositions of law:

> PROPOSITION OF LAW NUMBER I: Although fellatio is not defined by the Ohio Revised Code, it is a sexual act in which the mouth comes into contact with the penis, and in the absence of any physical evidence or testimony that such a contact occurred, a trial court's failure to sustain appellant's motion for judgment of acquittal denies the accused his constitutional rights to due process [and] a fair trial.

> PROPOSITION OF LAW NUMBER II: The Appellant, in a rape prosecution, is denied his constitutional rights to due process and a fair trial by the trial court's refusal to sustain motions for judgment of acquittal when the only evidence of the offense is expert testimony regarding a skin tear located in the anogenital area and the expert further testifies that the injury could have a non-sexual origin.

ECF Doc. 6-1, Page ID# 177, 181.  On April 20, 2016, the Ohio Supreme Court declined to accept jurisdiction of Murphy's appeal.  *See id.*, at Page Id#223.

**3.      Modified Sentence**

---

[2] The court of appeals also overruled Murphy's other assignments of error, relating to issues not presented in this habeas proceeding.

On August 8, 2016 the trial court sentenced Murphy to life imprisonment without parole eligibility on the Count One fellatio rape charge, a prison term of eleven years on the Count Two lesser included charge of attempted rape, and a prison term of eight years on the Count Three child endangering charge.  ECF Doc. 6-1, Exhibit 13, Page ID# 225.  The trial court again ordered the prison terms to be served consecutively.  *Id.*

### 4.    Federal Habeas Corpus Petition

On September 19, 2016, Murphy, with the assistance of his retained state court trial and appellate counsel,[3] filed the instant petition for writ of habeas corpus asserting a single ground for relief:

> GROUND ONE: Petitioner was denied his due process rights to a fair trial under the Fourteenth Amendment to the Constitution of the United States because there was insufficient evidence of fellatio or sexual conduct from which a jury could reasonably return a verdict of guilty and the trial court should have sustained the defense counsel's timely and repeated Motions for Judgment of Acquittal.

ECF Doc. 1-1, Page ID# 21.  On January 19, 2017, Warden Coleman filed a return of writ.  ECF Doc. 6.  On February 16, 2017, Murphy's counsel filed a traverse to the return of writ.  ECF Doc. 8.

## III.    Review on the Merits

### A.    General Standards of AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Murphy's petition for writ of habeas corpus.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences…and 'to

---

[3] The court takes judicial notice of the death of Murphy's counsel, James Burdon, on November 13, 2017. http://www.legacy.com/obituaries/ohio/obituary.aspx?n=james-l-burdon&pid=187231392&fhid=32475

further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)).

AEDPA "recognizes a foundational principle of our federal system:  State courts are adequate forums for the vindication of federal rights."  *Burt v. Titlow*, 571 U.S. 12, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Id*.  One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "In order to have an unreasonable application of clearly established Federal law, the state-court decision must be 'objectively unreasonable,' not merely erroneous or incorrect.  This standard requires the federal courts to give considerable deference to state-court decisions.  *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007) (citation omitted).  AEDPA essentially says to federal courts, 'Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable.'  *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)."  *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008) (internal quotation marks omitted).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).  A state court has

adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

A state court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). As noted above, a habeas petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also* 28 U.S.C. § 2254(e)(1); *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state court adjudications of federal claims. The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under

7

*de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*. at 103. This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id*. at 102.

> **B.** **Ground One – Sufficiency of Evidence of Rape, Fellatio, and Anal and/or Vaginal Attempted Rape**
>
> > **1.** **Count One – Fellatio Rape under Ohio Rev. Code. § 2907.02(A)(1)(b)**

Murphy asserts that there was insufficient evidence to convict him of fellatio rape as charged in Count One, because no witness testified that Murphy's penis ever came into contact with the child's mouth. *See* ECF Doc. 1-1, Page ID# 23-25.

A defendant who alleges he was found guilty without sufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment. *See Jackson v. Virginia*, 443 U.S. 307, 315, 321 (1979). There is sufficient evidence to support a conviction whenever, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Jackson v. Virginia*, 443 U.S. at 319). A federal

court may not overturn a state court decision rejecting a sufficiency of the evidence challenge

unless the state court decision was "objectively unreasonable."  *Cavazos v. Smith*, 565 U.S. 1, 3

(2011) (per curiam).

In habeas cases challenging the sufficiency of evidence filed after the enactment of

AEDPA, two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the
> constitutional sufficiency of the evidence used to convict him, we are thus bound
> by two layers of deference to groups who might view facts differently than we
> would. First, as in all sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most favorable to the
> prosecution, any rational trier of fact could have found the essential elements of
> the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319,
> 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the
> evidence, re-evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993).
> Thus, even though we might have not voted to convict a defendant had we
> participated in jury deliberations, we must uphold the jury verdict if any rational
> trier of fact could have found the defendant guilty after resolving all disputes in
> favor of the prosecution. Second, even were we to conclude that a rational trier of
> fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas
> review, we must still defer to the state appellate court's sufficiency determination
> as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency-of-the-evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and

then to the appellate court's consideration of that verdict, pursuant to the AEDPA.  *Tucker v.*

*Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

Federal courts must look to state law for the substantive elements of the criminal offense,

but the minimum amount of evidence that the Due Process Clause requires to prove the offense

is purely a matter of federal law.  *Coleman v. Johnson*, 566 U.S. 650, 655 (2012).  The Due

Process Clause requires that each element of a crime be proved to a jury beyond a reasonable

doubt.  *See Alleyne v. U.S.*, 570 U.S. 99, 104 (2013); *see also Fiore v. White*, 531 U.S. 225, 227

(2001).  Circumstantial evidence can be sufficient to support a criminal conviction.  *See Desert*

*Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003); *see also Holland v. U.S.*, 348 U.S. 121, 140, (1954) (observing that, in criminal cases, circumstantial evidence is "intrinsically no different from testimonial evidence"); *Tilley v. McMackin*, 989 F.2d 222, 225 (6th Cir. 1993). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

Ohio Rev. Code § 2907.01(A) defines "sexual conduct" to include fellatio between persons regardless of sex and without privilege to do so. Ohio Rev. Code § 2907.01(B) defines "sexual contact" to include "any touching of an erogenous zone of another . . . for the purpose of sexually arousing or gratifying either person." Although fellatio is not defined in the Revised Code, Ohio courts have defined it as "any contact between any part of the mouth and the male sex organ" (*State v. Hudson*, 2nd Dist. Montgomery No. 22793, 2009-Ohio-2776, ¶ 16) and "the practice of obtaining sexual satisfaction by oral stimulation of the penis." *In re M.D.*, 38 Ohio St. 3d 149, 527 N.E.2d 286, 289 (1988). Proof of penetration is not necessary to support a fellatio rape conviction. *State v. Molen*, 2nd Dist. Montgomery No. 21941, 2008-Ohio-6237, ¶ 38; *see also In re M.D.*, 527 N.E.2d at 289.

The Ohio Court of Appeals concluded there was sufficient evidence to convict Murphy of fellatio rape as follows:

> {¶ 27}  [A]t trial herein Dr. Steiner testified,
>
> > When we see that on x-ray, that tells us that there's a wound that allows the communication between the outside air and those tissues. That's the only way air can get in there.
> >
> > Normally the lining of the esophagus, the airway, and so on, keeps air out and bacteria and everything else – keeps air and bacteria out of those tissues and so you don't see it. But when there's a connection, a wound, a laceration, air is allowed to get into those spaces and you see it on x-ray.
> >
> > And so this is a very significant finding on x-ray indicating that there's been a serious injury to the interior part of the body. I mean, this is clear back in the throat. You can hardly reach it with your finger. And to have

10

air in that space is a – a big deal.  It's not supposed to be there and you got to figure out where it's coming from, why it's there, and then treat the potential side effects of that. And if there's air there, there's bacteria and other garbage that got in there that shouldn't be.

\* \* \*

One of the most common causes of this finding on x-ray, one of the most traumatic events, is a child running around with a pencil in their mouth, they trip, they fall, the pencil then shoves into the back of their throat. That causes the tear that allows the air to come in, and we see this finding in that situation.  I've had pencils, pens, had a toothbrush once that was actually – when I was in the emergency room, actually the child came in with the toothbrush still in there.  And all of that – those injuries gave us this kind of finding on x-ray.

It's a serious injury because there's a lot of vital tissues back in there and if that gets infected the infection can spread down into the chest as well as up into the base of the skull. So this is a big deal when you find it, it's a serious injury. And it's a result of a penetrating injury into the mouth, into the deep areas of the mouth.

\* \* \*

A. We have injuries to two areas of the body that are often targeted with sexual activities, sexual acts.  We have the mouth that demonstrates clear penetrating trauma to the oropharynx, to the mouth that is deep into the throat that was forced.  We also have trauma to the genitalia.  That was blunt force trauma to the genitalia.  Those two injuries, as I mentioned, are often seen as a result of sexual activity with young children.  And so it was our suspicion that there may have been – that these injuries may have been the result of sexual activity, and so sexually transmitted diseases were tested for and treated for.  [ECF Doc. 7-2, p. 368–373].

{¶ 28} Dr. Steiner also testified to the significant bruising to the child's head and face, and testified the areas were not likely the result of an accident. [*Id*. at 358]. He testified there was bruising behind the ears, which would not be the result of a defined accident of a child being hung upside down. Tr. at 359–360. He further testified to the injuries being to both sides of the head and to symmetrical locations. [*Id*. at 360].

{¶ 29} Dr. Steiner further testified to the injury around the child's mouth and lips. He testified the abrasions were similar to a rug burn, and were the result of friction, or traumatic rubbing of the surface of the skin, abrading the area, rubbing away the surface of the skin down to the middle layers of the basal layers of the skin itself. [*Id*. at 363–364]. Specifically, he opined,

Q. And what would cause an injury like this?

A. Well, a – again, this is rather symmetric, distributed fairly evenly around the entire mouth, and so there would have been something that abraded or penetrated into the mouth against her resistance to keep that object out of her mouth.  It – oh, you took the picture down.

Q. I'm sorry.

A. I'm sorry.

Q. Sorry about that.

A. So she was resisting something that was entering into her mouth with her lips tight, her mouth tightly closed, but something was being forced into her mouth.

Q. Thank you.

Tr. at 364.

{¶ 30} Based upon the evidence noted supra, the evidence pertaining to the trauma to A.'s anogenital region noted supra and the entire record regarding Appellant's reactions and statements, we find Appellant's conviction for Rape, Fellatio, in violation of R.C. 2907.02(A)(1)(b) is supported by the sufficiency of the evidence.

*State v. Murphy*, 2015-Ohio-5108, at ¶ 27-30.

There was ample expert testimony and circumstantial evidence to both support Murphy's conviction for fellatio rape, and to support the Ohio Court of Appeals decision regarding the conviction.  The court of appeals noted that Dr. Steiner testified there was a puncture wound in A.'s esophagus at the back of her throat caused by a penetrating injury into A.'s mouth.  *State v. Murphy*, 2015-Ohio-5108, ¶ 27 (citing ECF Doc. 7-2, at p. 368-373).  Although Dr. Steiner testified that such a wound could be caused by a child falling while holding an object like a pencil or toothbrush in her mouth, S.L. testified that her daughter had not fallen with an object in her mouth prior to February 11, 2014.  ECF Docs. 7-1 and 7-2, p. 306, 369.  Dr. Steiner also testified that A. had deep, forced, clear penetrating trauma to her oropharynx and blunt force trauma to her genitalia, which were two injuries often seen as a result of sexual activity with

young children.  *State v. Murphy*, 2015-Ohio-5108, ¶ 27 (citing ECF Docs. 7-1, 7-2, p. 272, 368-373).  Dr. Steiner testified that there was significant bruising to A.'s head and face, including symmetrical bruises to both sides of A.'s head that would not result from a child being hung upside down.  *Id*. at ¶ 28 (citing ECF Doc. 7-2, at p. 359-360).

Dr. Steiner also testified that there were abrasions caused by friction or traumatic rubbing on the surface of the skin on the child's mouth and lips.  *Id*. at ¶ 29 (citing ECF Doc. 7-2, at p. 363-64).  Murphy argues that the abrasions around the child's mouth were the results of a viral, non-sexual infection.  ECF Doc. 8, at p. 12 (citing TR. Vol. 2, p. 404).  Although a January 9, 2014 report from Akron Children's Hospital indicated that A. had white blisters on her mouth and throat, Dr. Steiner rejected the suggestion that the injuries to A's mouth were blisters.  He insisted that the injuries were abrasions around A.'s lips.  *See* ECF Doc 7-2, p. 403-404.  Dr. Steiner also testified that his hospital had checked for viral infections and the results were negative, although A. was later given antiviral agents on February 17th and 18th and a resident doctor may have questioned the adequacy of the specimen collected from A.'s mouth and lips for testing.  *See* ECF Doc 7-2, p. 408-412.  Witness Desiree Mosberger testified that A.'s lips were "reddened, swollen, and blistered" on January 14, 2014 (ECF Doc. 7-3, p. 594), but she did not see the child from January 14th to February 12th and further observed that the child's lips looked different on February 12th than they had on January 14th.  *Id*. at 607.  S.L. also testified that she had not seen any injuries on the child's lips the day before the incident occurred.  ECF. Doc. 7-1 and 7-2, p. 293-99, 376, 459-60, 463-64.

The Ohio Court of Appeals also found that the entire record regarding Murphy's reactions and statements supported his conviction for fellatio rape.  *State v. Murphy*, 2015-Ohio-5108, ¶ 30.  Murphy was found holding a crying A. upside down in the shower by her ankles at 6:00 A.M.; and Murphy said he was washing off diarrhea and vomit.  ECF Docs. 7-1 and 7-2, p.

273-74, 377.  The mother testified that Murphy had assisted her as she bathed the child before, but he had never bathed the child on his own.  *Id*. at 275.  The next day, after the mother awoke, found the child injured, and asked Murphy what he did, Murphy said that he could not live with himself and wanted to kill himself.  *Id*. at 278-80.  The mother testified that Murphy told her that if she called anybody, he would make sure she would regret it.  *Id*. at 280.  Her testimony was corroborated by that of the paramedic-friend she contacted for assistance, who heard Murphy say that "he wanted to go in the woods and kill himself."  ECF Doc. 7-2, p. 441-42.  Murphy also told the child's mother to lie and tell the doctors that he was not present when the child was injured, and to lie and tell the police that the mother had caused the child's injuries.  ECF Doc. 7-1, at p. 305, 327, 334, 336.  Police also obtained evidence from the home, including baby wipes, a diaper, and the child's sleeper and turtle pillow, which all contained A.'s blood.  ECF Docs. 7-1 and 7-2, at p. 302, 495-96, 500, 521.

When the Ohio Court of Appeals decision on direct appeal is examined in light of the applicable United States Supreme Court precedent, it is clear that the court of appeals applied the correct law and did so in an objectively reasonable fashion.  There was indeed ample expert testimony and evidence which the jury believed.  It is equally evident that the jury heard, but rejected, Murphy's version of events.  That is all that the Fourteenth Amendment requires.  Murphy's Ground for Relief with respect to Count One lacks merit and should be dismissed with prejudice.

### 2.      Count Two – Attempted Rape under Ohio Rev. Code §§ 2923.02 and 2907.02(A)(l)(b)

Murphy also argues there was insufficient evidence for the jury to find him guilty of vaginal and/or anal rape.  *See* ECF. Doc 8, at p. 7.  Murphy argues that the only evidence supporting the verdict was Dr. Steiner's testimony regarding the penetrating trauma to A.'s

14

anogenital area.  *Id*. at 10.  The respondent has not addressed Murphy's arguments regarding

Count Two.  *See* ECF Doc. 6, Page ID# 43.

As an initial matter, Murphy's arguments appear to address the trial court judgment

rendered after a jury found Murphy guilty of vaginal and/or anal rape.  This court may only

review the Ohio Court of Appeals decision in regard to Count Two, because that decision was

"last explained state-court judgment" on the federal claim at issue.  *See Ylst v. Nunnemaker*, 501

U.S. at 805.  The Supreme Court of Ohio declined to accept jurisdiction of Murphy's appeal.

ECF Doc. 6-1, Page ID# 223.

The Ohio Court of Appeals noted that Murphy was convicted of the Count Two charge of

rape, in violation of Ohio Rev. Code § 2907.02(A)(1)(b).  That statute states in relevant part that

"[n]o person shall engage in sexual conduct with another who is not the spouse of the offender . .

. when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows

the age of the other person."  Ohio Rev. Code § 2907.01(A) defines "sexual conduct" to include:

> vaginal intercourse between a male and female; anal Intercourse, fellatio, and
> cunnilingus between persons regardless of sex; and, without privilege to do so, the
> insertion, however slight, of any part of the body or any instrument, apparatus, or
> other object into the vaginal or anal opening of another.  Penetration, however
> slight, is sufficient to complete vaginal or anal intercourse.

After engaging in a detailed review of Dr. Steiner's testimony, the Ohio Court of Appeals

concluded there was insufficient evidence to convict Murphy of vaginal and/or anal rape.  *State*

*v. Murphy*, 2015-Ohio-5108, ¶ 22.  The court stated:

> {¶ 22}  Upon review of the evidence presented, we find the evidence insufficient
> to prove the essential element of penetration.

> {¶ 23} Dr. Steiner testifies to a blunt force trauma to the vaginal area, similar to a
> straddle injury. While the evidence demonstrates injury, including tearing and
> laceration to the anogenital region, the testimony concludes the same is caused by
> blunt force trauma.  It does not demonstrate penetration, even slight, of the vagina
> or anus.

{¶ 24} While we recognize the law requires only slight penetration, we find the evidence herein insufficient to demonstrate even slight penetration. However, we find the evidence was sufficient to prove attempted vaginal and/or anal rape. *See State v. Lee*, 10th Dist. Franklin County 03 AP-436, 2004-Ohio-5540, citing *State v. Wells* (2001), 91 Ohio St.3d, 32, 35.

{¶ 25} Appellant's first assignment of error is sustained. We vacate Appellant's conviction on one count of rape and modify the judgment entered by the trial court to reflect a verdict of guilty on the lesser included offense of attempted rape. Because attempted rape is a lesser offense, we remand the matter to the trial court for resentencing on Count Two as attempted rape.

*Id*. at ¶ 22-25.

Ohio state courts have held that "whe[n] the evidence shows that the defendant attempts to penetrate the victim's anus, and, for whatever reason, fails to do so and makes contact only with the buttocks, there is sufficient evidence to prove the defendant guilty of the crime of attempted anal rape." *State v. Lee*, 10th Dist., Franklin No. 03AP-436, 2004-Ohio-5540, ¶ 15 (citing *State v. Wells,* 91 Ohio St.3d 32, 35, 740 N.E.2d 1097 (2001)). Here, Dr. Steiner found trauma to A.'s genitalia, including an area of laceration on the perineum in A.'s anogenital area (ECF Doc. 7-2, p. 372-73), but no injuries to the child's anal cavity, vaginal entrance, or hymenal tissue. *Id*. at 390-93. Although the court found Dr. Steiner's testimony did not demonstrate even slight penetration of the vagina or anus, the court did find the evidence was sufficient to prove the lesser included offense of attempted vaginal and/or anal rape. *State v. Murphy*, 2015-Ohio-5108, ¶ 24.

Murphy argues Dr. Steiner's testimony was speculative and unhelpful because the injury in A.'s anogenital area could have been the result of sexual abuse or non-sexual trauma caused by a "straddle injury." ECF. Doc 8, at 9-10. However, the evidence, including the testimony of the child's mother, indicates that the child did not have an injury to her anogenital area prior to the night of February 11, 2014. *See* ECF. Doc. 7-1 and 7-2, p. 272, 376, 491-92. The mother testified that she changed the child's diaper at 6:00 A.M., and she did not notice any injury to the

child's anogenital region.  ECF Doc. 7-2, p. 286.  But when the mother changed the child's diaper at the hospital later that day, she noticed that there was tearing and redness around the rectum that was not present before.  ECF Docs. 7-1 and 7-2, p. 285-86, 430.  Police also obtained evidence from the home, including baby wipes, a diaper, and the child's sleeper and turtle pillow, which all contained blood.  ECF Docs. 7-1 and 7-2, at p. 302, 495-96, 500, 521.

When the Ohio Court of Appeals decision on direct appeal is examined in light of the applicable United States Supreme Court precedent, it is clear that the appellate court applied the correct law and did so in an objectively reasonable fashion.  Although there was insufficient evidence to prove the element of penetration, there was sufficient evidence to prove attempted vaginal and/or anal rape.  There was also sufficient evidence for a finder of fact to believe that the damage to the child's anogenital region was caused by sexual conduct rather than a non-sexual straddle injury.

Murphy's Ground for Relief with respect to Count Two lacks merit and should be dismissed with prejudice.

## IV.     Recommendation Regarding Certificate of Appealability

### A.     Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts

that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'"  *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  The statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability.

**B.  Analysis**

For claims dismissed on the merits, a Certificate of Appealability may only issue when a movant has made a "substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).  This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. at 484; *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)).

Here, given the substance of Murphy's sole ground for relief and the thorough vetting of petitioner's arguments and constitutional rights in the state courts and above, reasonable jurists could not find the assessment of Murphy's constitutional rights to be debatable or wrong, and the Court should conclude that Murphy is not entitled to a certificate of appealability.

## V.    Recommendations

Because the Ohio Court of Appeals applied the correct law and did so in an objectively reasonable fashion and because Murphy's contention in his sole ground for relief that there was insufficient evidence to sustain the state court rape and attempted rape judgments on Counts One and Two lacks merit, I recommend that the Court deny Murphy's petition for a writ of habeas corpus under 28 U.S.C. § 2254 in its entirety.  I further recommend that no certificate of appealability be granted, should one be requested.

Dated: July 9, 2018

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).